## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

CARLA SUZANNE JACKSON)
    **Plaintiff**)
)
vs.)
)
CITY OF CLEVELAND, CLEVELAND)
POLICE DEPARTMENT, CHIEF WES)
SNYDER, DETECTIVE LIEUTENANT)
ROBERT HARBISON, CAPTAIN DAVID)
BISHOP, DETECTIVE LIEUTENANT)
MARK GIBSON and LIEUTENANT)
DENNIS MADDUX)

**DOCKET NO.** 1:12-CV-22

FILED

JAN 24 2012

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

## COMPLAINT

### I. FACTUAL BACKGROUND

Comes now, the plaintiff, Suzanne Jackson, by and through her attorneys and files this complaint against the above named defendants.

1. Suzanne Jackson is a resident of Bradley County Tennessee. She resides at 134 Winding Creek Circle NW, Cleveland TN 37312.

2. Suzanne Jackson began working for the Cleveland Police Department in 1990, where she worked for approximately one year as a reserve police officer. On August 17, 1992, she was hired full-time as a police officer working in various divisions throughout the years, serving as a field training officer for approximately seven years, and as a master police officer prior to promotion in 2008.

3. Chief Wes Snyder is the chief of the Cleveland Police Department and resides in Bradley County Tennessee. Chief Snyder is subject to the jurisdiction of this court.

4. Detective Lieutenant Robert Harbison, Captain David Bishop, Detective Lieutenant Mark Gibson, and Lieutenant Dennis Maddux are all employed with the Cleveland Police Department and all reside in Bradley County Tennessee. All defendants are subject to the jurisdiction of this court.

5. The Cleveland Police Department is a Department of the City of Cleveland Tennessee.

6. The City of Cleveland is an entity created by City Charter and is responsible for the operations of the Cleveland Police Department.

7. On February 12, 2008, the plaintiff was transferred from patrol officer, support services division, to the criminal investigation division. She was assigned as a detective/investigator primarily in the crimes against people division under the direction and instruction of Detective Mark Gibson.

8. During her tenure as a police officer and as an investigator in the crimes investigation division, the plaintiff was treated in a discriminatory manner because of her sex as a woman and, later, after the filing of discrimination complaints including charges with the EEOC, actions to retaliate against the plaintiff were undertaken by the Police Department.

9. When the plaintiff was transferred to the criminal investigation unit she was issued a Nissan Maxima after her Chevy Tahoe was retired for high mileage. Police Department policy at the time stated that the vehicle goes with the position, and a brand-new vehicle was purchased to replace the Tahoe with that vehicle being assigned to Detective Robert Harbison by criminal investigation division Lieutenant David Bishop. The vehicle should have been assigned to the plaintiff and when the plaintiff spoke with Bishop to ask about the new unit he promptly told the plaintiff in a very agitated tone, "I will assign vehicles as I see fit and according to the needs of the department. Do you have a problem with that Detective?" This is one incident in which the plaintiff believes it was because she was female.

10. On or about March 31, 2009, Detective Harbison, acting in a supervisory capacity, changed the plaintiff's work hours when she was on call. The plaintiff alleges that Harbison did this as Harbison knew that she was a single mother of two school-age children and that the change in time would make things more difficult for the plaintiff. Harbison, because of the plaintiff being female, terminated her ability to flex her hours during the week to accommodate her school schedule, changing her from the flex schedule she had been using since she entered the criminal investigations division over a year ago. The plaintiff alleges that Harbison was motivated to do so because of her sex and because he wanted her to

quit school before finishing the semester. Additionally, Harbison made plaintiff take two days off on vacation when she only needed to take one day. She was forced to utilize vacation days on both Thursday and Friday, when she only needed to take Friday off. Moreover, a number of specialized school requests were denied for training purposes. Other male detectives were allowed to attend certain specialized schools and training, but the plaintiff was not permitted to attend the same training.

In April of 2009, the plaintiff was called into the office of Lieutenant Robert Harbison and advised that Crime Scene Technician Jeff Griggs had filed a complaint against the plaintiff. The plaintiff asked for a copy of the complaint but was never given one, although Lt. Harbison ordered the plaintiff to respond to it in writing. The complaint was later dropped, and Griggs actually apologized to the plaintiff informing her that he had been pressured by Harbison to actually write the complaint against the plaintiff. Although reported to Pam Reeves, who conducted an investigation for the Department regarding claims of discrimination, the incident was never properly investigated by Pam Reeves, although the plaintiff informed her of the complaint. Pam Reeves never spoke to CST Griggs.

11. The plaintiff alleges that there were various complaints filed against her by other male officers in the department. The complaints were unsubstantiated and filed against her because of her sex. As a consequence of complaints filed on

October 8, October 22, October 23 and other actions by the department on December 4, 2009, the plaintiff verbally informed her supervisor, Lieutenant Dennis Maddux, of her intention to file a sexual harassment complaint against Lieutenant Robert Harbison. As a consequence of her action, on January 13, 2010, the plaintiff was verbally informed by Lieutenant Maddux and Captain David Bishop that she was being transferred back to patrol sergeant effective April 4, 2010. Said action was a result of her filing a sexual harassment claim.

12. On March 10, 2010, the plaintiff sent an e-mail to her supervisor Lieut. Maddux stating her objections to be transferred back to patrol and informing him of the detrimental effect that the transfer would have on her points accrual process utilized for promotion and according to Cleveland Police Department policy. The plaintiff alleges that the e-mail was never sent up the chain of command.

13. On April 4, 2010, the plaintiff was transferred back to patrol as a sergeant on the Delta team, with only one uniform for more than a three month period. The plaintiff did not receive any additional uniforms until July of 2011, despite inquiring frequently about obtaining more uniforms.

14. On August 19, 2010, the plaintiff met with Chief Snyder at his office to discuss her concerns about the way she had been treated in the criminal investigations division and inappropriate transfer because Lieutenant Harbison did not like her, and because of her beliefs that he was treating her differently because

of her sex. She expressed a desire to move back to the criminal investigations division in the same position with the Chief.

15. On September 14, 2010, the plaintiff was involved in a car accident with her city vehicle while working third shift. She was, thereafter, ordered to go to the hospital emergency room to undergo a drug testing. The plaintiff alleges that she was treated differently because of her sex and that other male officers including Captain McClain, who was in an accident with his city vehicle at his residence on January 13, 2011, and Chief Snyder was an accident with a city vehicle in October or November of 2011 with neither being drug tested or any entries being made into the Guardian tracking system to document any accidents. Additionally, prior to the plaintiff's accident another male officer Danny Hickman, crashed on the third shift when he fell asleep while driving, and he was not required to undergo a drug test as well. The plaintiff's drug test was negative.

16. On or about October 7, 2010, the plaintiff mailed a charge of discrimination to the equal employment opportunity commission office in Nashville. See Exhibit 1.

17. On or about November 11, 2010, the plaintiff is working third shift when she was contacted by two other male officers informing her to watch her back against Bishop, Harbison and Maddux as male officers were going to file a complaint against her regarding her equal employment opportunity charge.

Additionally, she was told that there was going to be a lawsuit filed against her for slander and that Bishop was sending an e-mail tomorrow to block her transfer back to the criminal investigation division, which was tentatively promised to her by the assistant chief of police, Gary Hicks on behalf of the Chief. Additionally, Bishop was going to request an internal affairs investigation against the plaintiff.

18. On November 15, 2010, the plaintiff mailed an amended complaint/charge to the Equal Opportunity Employment Commission in Nashville Tennessee. See Exhibit 2.

19. In December 2010 or January 2011, the plaintiff spoke with Lieutenant John Dailey, her current supervisor, regarding her claims for sexual harassment. The Lieutenant told her that Chief Snyder had asked him if she would be willing to forget about her sexual harassment claims and further asked him if she realized that her path on her career ladder was headed toward lieutenant. The Chief stated something about her star is still shining brightly referring to the potential promotion to lieutenant if the complaint went away.

20. On or about January 13, 2011, Capt. Tommy McClain had an accident in his city vehicle as at his home causing several thousand dollars in damage. Captain McLain was not subjected, as was the plaintiff, to any drug testing or Guardian entry due to the crash. The crash took place at his private residence outside the city limits, and the only action taken by the department was a minor damage report as

opposed to a regular crash report. The Captain received preferential treatment because he was a man, and the same treatment was not afforded to the plaintiff who also was in an accident but subjected to drug testing and a Guardian entry regarding her conduct.

21. In retaliation for filing a complaint of sexual harassment with the Equal Employment Opportunity Commission on February 14, 2011, an offense report was prepared by Leiutenant Harbison making false and misleading allegations against the plaintiff regarding timesheet and discrepancies in 2008 and 2009. The plaintiff was never informed of the report and had no knowledge of the report until July of 2011 when the plaintiff stumbled upon the report by accident. Police department policy states that any employee is to be informed whenever an employee is under an internal affairs investigation the plaintiff was not informed of this investigation. The plaintiff alleges this is another incident of treating the plaintiff differently than her male counterparts.

Lieutenant Harbison was acting in retaliation to the complaints of sexual discrimination filed by the plaintiff.

22. On or about April 7, 2011, the plaintiff met with Pam Reeves, an attorney investigating the allegations of sexual discrimination as outlined in the sexual discrimination complaint filed by the plaintiff and attached as Exhibit 1, and the charges filed with the employment opportunity commission attached as Exhibit

2. Thereafter, Reeves was employed by the Department and the City to conduct an investigation and she issued a report attached as Exhibit 3. During the interview Reeves inquired as to the sexual conduct of the plaintiff, which was improper as it related to the issues of discrimination. She also inquired about rumors regarding an alleged affair the plaintiff had with the Mayor which was denied by the plaintiff. A report was issued on June 7, 2011. The report was issued after an incomplete factual investigation, and the report, moreover, was distributed publicly among the department to other officers in the department. The distribution was, once again, in retaliation for filing a discrimination claim. The defendants collectively, or individually, caused the report to be widely distributed in the Department.

23. The plaintiff's complaints filed against the department were widely distributed by the defendants either collectively or individually to the Police Department, officers in the department in order create a hostile work environment and to create hostility toward the plaintiff from other officers in the department. The public and widespread dissemination was prior to any official investigation of the complaint being initiated.

24. After Pam Reeves issued a report on July 1, 2011, the defendants took further retaliatory action against the plaintiff removing the plaintiff from being an on-call detective assignment which was received by text message from Lieutenant Gibson. Additionally, the plaintiff was informed that no further cases would be

assigned to her. Additionally, the plaintiff discovered that several other detectives had filed a grievance regarding her not working cases and that they were being assigned to more cases than the plaintiff. All of the detectives in the criminal investigation division were male and were Lieut. Robert Harbison, Walter Mitchell, Brian Smith, Matt Jenkins, Steve Ross, Lieut. Mark Gibson, Matt Ruth, Andy Ratcliff, Brian Pritchard, and K-9 officer Cody Hinson. The male investigators in the criminal investigation division were treated differently than the plaintiff, a female.

25. On July 1, 2011, the plaintiff received a text message from the chief of police Snyder at 7:59 PM stating "you took it past me..." which succeeded a message sent at 7:52 PM stating "DA may not prosecute any of your cases. Until someone gives me an answer as to what they will accept from you, I can't assign you to any cases. Wish I had a better answer for you but I do not."

26. On July 7, 2011, District Attorney General Steve Bebb issued a letter against the plaintiff based upon the findings of Pam Reeves informing the plaintiff that he will not prosecute cases which she is working. The letter is based upon allegations of misplacing evidence not appropriately handling evidence, said allegations being untrue. Other male officers have handled evidence in a similar manner, have dealt with evidence of a similar manner, and have been continued to

allowed to testify and have not been disciplined or investigated for the handling of the evidence.

27. On July 8, 2011, the plaintiff was notified by Lieutenant Gibson that she was under an internal affairs investigation for mishandling evidence on June 22, 2011, when she inadvertently returned a file (one of several files) to the records clerk with a telephone contained in the file. Other officers and detectives have handled evidence in the same or similar fashion, and have not been investigated or disciplined nor had any action taken against them such as the actions by Steve Bebb.

28. The Police Department launched an investigation against the plaintiff regarding the handling of evidence in a file, and apparently regarding timesheet entry and falsification. As a result of the evidence investigation regarding the misplaced cell phone in the file on June 22, 2011, the plaintiff received an intimidating text message on July 22, 2011, from Chief Snyder at 2:14 PM stating "Suggestion. Doubt if you will take. If you did something wrong, admit it, move on with life."

29. On August 4, 2011, the plaintiff received a substandard performance evaluation from Lieutenant Gibson. Thereafter, on August 5, 2011, the plaintiff met with Lieutenant Gibson in her office, and he asked her to return his previous evaluation form to him. Lieutenant Gibson told the plaintiff that he believes her

current situation was brought about by her own actions in the past year and all of the turmoil her actions caused referring to complaints of sexual discrimination. Gibson said he stands by the evaluation he wrote that he based largely on the investigative report conducted by Pam Reeves arising from the allegations of sexual discrimination. Additionally, he based it upon the letter issued by District Attorney Bebb.

30. On August 15, 2011, the plaintiff was placed on administrative leave as soon as she reported for duty. Bishop instructed her to return weapons, badge, identification and vehicle. She was then escorted out of the building as several other officers watched in the hallway.

31. On August 30, 2011, the plaintiff was contacted by Jessica Oh from News Channel 9. Ms. Oh stated she had received a packet about the plaintiff in the newsroom and discussed it with her supervisor, and he suggested that she try to get the other side of the story because it appears to be an attack against the plaintiff. The packet was sent by the Department in retaliation for claims filed against the Department and to intimidate the plaintiff.

32. On September 12, 2011, the plaintiff met with Chief Snyder, Capt. David Bishop, Lieut. Mark Gibson, Lieut. Sheila Freeman, and HR director Jeff Davis where she was terminated for policy violations as attached as Exhibit 4. The plaintiff alleges that other officers were male, have committed other similar

violations as to the violations outlined in the termination paperwork provided to the plaintiff and in the stated reasons for terminating the plaintiff and they were treated differently and were not terminated. The plaintiff's termination was retaliatory and discriminatory in nature and were brought to fruition by the Chief of Police Snyder.

33. Since her termination, the department has undertaken to continue an investigation into falsification of timesheets which has no factual basis or truth regarding the allegations of falsification of timesheets two and three years earlier and prior to her complaint. The department undertook a course of action that is retaliatory in nature by requesting that an investigation be conducted and said investigation is being conducted by the department through its use of the Tennessee Bureau of investigation. January 18, 2012, the plaintiff was interviewed regarding the allegations of falsification of timesheets. The plaintiff alleges that department is motivated to retaliate against the plaintiff in that out of this motivation the department referred the allegations for further investigation by the District Attorney's office. The actions of the department investigating two- and three-year-old claims, without proper justification, supports the plaintiff's contention that department is undertaking actions to retaliate against her. The allegations are false and are based upon inaccurate and falsified statements from Lieutenant Harbison made in retaliation for the plaintiff filing complaints alleging

sexual harassment against the department. While being interviewed for purposes of investigating the false allegations surrounding her timesheets, the investigator asked about a rumor being spread that the plaintiff was having an affair with the Mayor of Cleveland. Said allegations are false and are evidence of the intentional and purposeful actions of the defendants either in concert with one another or individually to create a hostile work environment and discriminate against the plaintiff.

## II. INTENTIONAL, NEGLIGENT AND WRECKLESS INFLICTION OF EMOTIONAL DISTRESS, AND NEGLIGENCE BY THE DEFENDANTS

34. The allegations in paragraphs 1-33 are re-alleged and incorporated into this count as thought they were specifically alleged herein.

35. The actions of the defendants, either separately or collectively were designed to suppress women in the department, to create an atmosphere of fear, to create an atmosphere of dominance and sexual dominance, and to prevent any complaints to any other outside source. Consequently, when the filed complaints of sexual harassment the defendants undertook action to retaliate against the plaintiff by undertaking acts to make sure she was in her place, to insure she was treated differently than other male officers, and to insure that she was terminated from her employment with the department. Lt. Harbison undertook a specific course of action to report the plaintiff for fraudulent acts that never occurred, to accuse her of

misplacing evidence causing her to be singled out by the Attorney General Steve Bebb and to insure that she no longer pursued complaints of sexual discrimination because she was a female. Harbison undertook these actions with the specific intent to cause emotional harm to the plaintiff and/or acted negligently and recklessly that the actions cause emotional harm. Ultimately after a series of actions as alleged in this complaint the plaintiff, after filing charges of discrimination, was terminated from her employment for acts, if committed by a male officer, that were insufficient to terminate her as an officer in the department. Lt Harbison undertook a course of action to insure her termination which ultimately has caused emotional distress and turmoil in the plaintiff's life due to the pattern of intentional discrimination. The termination paperwork provided to the plaintiff is attached hereto as Exhibit 4.

The plaintiff would show that other male officers have handled evidence in a same or similar matter and have not been terminated or disciplined. The plaintiff would further show that the evidence, which was a cell phone, was not evidence that undermined the prosecution of the case and that the case ended with the successful incarceration of the defendant.

## III. DEFENDANTs VIOLATED TITLE VII AND DID DISCRIMINATE AGAINST THE PLAINTIFF

36. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-35 as if the same were more fully set forth herein.

37. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer…to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (1).

38. As alleged in paragraphs 1-30 above, the pattern of conduct shows that the Defendants did create a hostile work environment and did discriminate against the tangible elements of her employment. Moreover, the defendants acted to further discriminate against the plaintiff by retaliating against her for filing a charge of discrimination against the defendants. Moreover, said retaliation is continuing in nature with the defendants directing or causing an investigation into over 2 year old allegations regarding time entries and the fraudulent time entries, said allegations being false. As such, as alleged in paragraphs 1-30 above the pattern of conduct of the defendants created a hostile work environment, and were acts committed in retaliation for the plaintiff pursuing allegations of discrimination against the above named defendants.

39. Defendant s, City of Cleveland and the Cleveland Police Department are directly and vicariously liable for the sexual discrimination committed against the plaintiff, for all acts of retaliation committed against the plaintiff, and for all such common law acts as alleged in paragraphs 1-36 above.

## IV. DEFENDANTS SNYDER, HARBISON, BISHOP, GIBSON AND MADDUX WERE THE AGENTS FOR THE CITY OF CLEVELAND TENNESSEE AND THE CLEVELAND POLICE DEPARTMENT WHILE THEY WERE SEXUALLY DISCRINMINATIONG THE PLAINTIFF AND COMMITTING ACTIONS OF RETAILIATION AND EMOTIONAL DISTRESS AGAINST THE PLAINTIFF

40. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-40 as if the same were more fully set forth herein.

41. Chief Wes Snyder, Detective Lieutenant Robert Harbison, Captain David Bishop, Detective Lieutenant Mark Gibson, and Lieutenant Dennis Maddux acted individually or in concert with one another to discriminate against the plaintiff under Title VI and under the Tennessee Human Rights Act because of her sex. All, either individually, or in concert with each other, undertook acts as alleged in paragraphs 1-30 above to retaliate against the plaintiff for filing a charge of discrimination which ultimately led to her termination based upon pretextual grounds. Additionally by committing said acts, the defendants, either individually or in concert with each other both negligently and recklessly, committed acts of emotional distress on the plaintiff causing her severe emotional distress. Moreover, the defendants, either individually, or in concert with each other, created a hostile work environment for the plaintiff and, while committing said acts as alleged factually and legally in paragraphs 1-38 of this complaint acted as agents for the City of Cleveland and the Cleveland Police Department. Therefore, the City and the Department are liable for said acts.

## V. THE DEFENDANTS ARE INDIVIDAULLY LIABLE TO THE PLAINTIFF FOR DISCRIMINATION UNDER TITLE VI, UNDER THE TENNESSEE HUMAN RIGHTS ACTION AND UNDER THE COMMON LAW OF TENNESSEE FOR DISCRIMINATION, RETALIATION, NEGLIGENCE AND EMOTIONAL DIESTREES

42. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-41 as if the same were more fully set forth herein.

43.     The defendants Chief Wes Snyder, Detective Lieutenant Robert Harbison, Captain David Bishop, Detective Lieutenant Mark Gibson ,Lieutenant Dennis Maddux are each individually liable to the plaintiff for acts of sexual discrimination under Title VI and the Tennessee Human Rights Act as alleged in paragraphs 1-39 above. Moreover, the defendants are in individually liable for acts of retaliation and intentional, negligent and reckless infliction of emotional distress as alleged in paragraphs 1-39 of the complaint.

## VI. THE DEFENDANTS ARE LIABLE TO THE PLAINTIFF, EITHER INDIVIDUALLY OR COLLECTIVELY, FOR DAMAGES FOR HUMILIATION AND EMBARASSMENT AND FOR MALICIOUS HARASSMENT UNDER THE TENNESSEE HUMAN RIGHTS ACT

44. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-40 as if the same were more fully set forth herein.

45. Section 4-21-306 of the Tennessee Human Rights Act allows the plaintiff to be compensated for humiliation and embarrassment along with other

remedies for more tangible damages. Section 4-21-701 allows for a cause of action for malicious harassment.

46. As alleged in paragraphs 1-45 above the defendants are liable to the plaintiff for damages pursuant to the Tennessee Human Rights Act for humiliation and embarrassment and malicious harassment.

**WHEREFORE**, the Plaintiff prays:

1.That process issue requiring that the Defendants appear and Answer this Complaint as set forth by law;

2.That Plaintiff recover damages for the acts and incidents set forth above, including but not limited to negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, reckless infliction of emotional distress, retaliation, violations of Title VII, violations of the Tennessee Human Rights Act, as may be reasonably apportioned by the jury;

3.That Plaintiff have and recover all costs in this action including but not limited to front pay, back pay, loss of benefits, damages for negligence and emotional distress, punitive damages as permitted by Title VII and the Tennessee Human Rights Act, Attorney's fees as provided for by Title VII and the Tennessee Human Rights Act and such other damages as may be permitted under Federal and State law;

4.That the Plaintiff have and recover interest on any judgment obtained;

5.That the Plaintiff have and obtain such other and further relief as may be meet and proper under the circumstances.

Carla Suzanne Jackson

STATE OF TENNESSEE
COUNTY OF HAMILTON

Sworn and subscribed before me this $\underline{24\cancel{4}}$ day of $\underline{\text{January}}$, 2012.
My commission expires $\underline{1/10/2012}$

Notary Public

Respectfully submitted,

**JAMES, GOINS, CARPENTER & TIDWELL**

**Stuart F. James, BPR # 013841**
**W. Gerald Tidwell, Jr., BPR # 10136**
817 Broad Street, Second Floor
Chattanooga, TN 37402
Telephone: (423) 756-3646

Facsimile: (423) 756-3647